**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL D. WARD,** | : | |
| **d/b/a In Touch Painting, Inc.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:06-cv-0210** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **FLYING J INC.,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This mater is before the Court on Plaintiff's Motion for Reconsideration of this Court's Order dated December 29, 2006.  In that Order, this Court granted in part and denied in part Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Venue, or, alternatively, to Transfer Venue.  This Court granted that motion to the extent that it found that it lacks specific personal jurisdiction over Defendant because Defendant lacks the requisite minimum contacts with the forum state.  Additionally, this Court noted that it was unable to determine that Defendant had continuous and systematic contacts with the forum state for purposes of general personal jurisdiction.  Finding that Plaintiff could not sustain its burden of proving this Court has personal jurisdiction over Defendant, this Court dismissed the case without prejudice.  Upon reconsideration, however, the Court finds that it has general personal jurisdiction over Defendant.  This Court, however, is not the proper venue for this action.  Thus, under 28 U.S.C. §1406, the Court **DISMISSES** this action without prejudice.

-1-

## II. BACKGROUND

### A. Facts[1]

Michael D. Ward ("Plaintiff") is a resident of Franklin County, Ohio. His business, In Touch Painting, Inc., is an Ohio corporation with its principal place of business in Franklin County, Ohio. Flying J Inc. ("Defendant") is a Utah corporation with its principal place of business in Ogden, Utah. Plaintiff alleges that Defendant owns and operates numerous travel plazas across the United States, including Ohio, and regularly does business with residents of the State of Ohio.

In August 2002, Plaintiff entered into a valid contract with the manager of a Flying J travel plaza located in Berkshire, Ohio. Pursuant to this contract, Plaintiff worked at this location until approximately July 2003. He was paid in full for his work under this contract.

In September 2003, Plaintiff then entered into a contract with Dave Sweeny, a manager and agent of Defendant, to perform restoration work on a travel plaza located in Omaha, Nebraska. Once Plaintiff began his work, Mr. Sweeny verbally requested that Plaintiff perform more work than was originally agreed upon in the original contract. Plaintiff agreed, and performed all the requested work at the Omaha travel plaza from September 2003 to April 2004. In April 2004, when Plaintiff completed his work, Plaintiff presented Mr. Sweeny with a bill totaling $11,493. Mr. Sweeny subsequently refused to remit payment to Plaintiff.

In April 2004, Plaintiff entered into a contract with Jamal Abdalla, a District Manager for Defendant, to perform restoration work on a travel plaza located near Wytheveille, Virginia.

---

[1]        The background information set forth below is, in large part, adopted from the Court's opinion dated December 29, 2006.

After a week of work in Wytheville, Plaintiff was called off the Wytheville project and directed to perform restoration work at a travel plaza near Columbia, South Carolina. Once Plaintiff began work at the Columbia travel plaza, however, Mr. Abdalla requested Plaintiff to perform work on Mr. Abdalla's personal residence. Plaintiff acquiesced. Eventually, Plaintiff completed the work at Mr. Abdalla's residence, as well as ninety-percent of the work for which he contracted at the Columbia travel plaza. When Plaintiff attempted to complete the work at the Wytheville travel plaza, he was asked to terminate the contract and go home. As a result, Plaintiff never received compensation for his work in Wytheville, Columbia, or Mr. Abdalla's residence. Additionally, Plaintiff claims that while he was restoring the Columbia travel plaza, he was harassed because of his race.

In August 2004, Plaintiff allegedly entered into an agreement with Matt Dehaibi, an employee of Defendant, to perform restoration work at a travel plaza near Clearbrook, Virginia, for $23,612. Plaintiff completed all requested work, but when he presented Mr. Dehaibi with a bill, Mr. Dehaibi refused to pay. Instead, Mr. Dehaibi offered Plaintiff $10,500 for his services. Subsequent to this exchange, Plaintiff contacted Debbie Newanhoff at Defendant's corporate headquarters. After a conversation with Ms. Newanhoff, Plaintiff learned that Mr. Dehaibi was never authorized to contract for restoration work. Ms. Newanhoff then paid Plaintiff only $10,500 for his services–a sum $13,112 less than the full contract price.

In October 2004, Plaintiff then allegedly entered into a valid agreement with Roger Henry and Dave Slider, manager and district manager for Defendant, respectively, to perform restoration work at a travel plaza near Davenport, IA. The contract price for this job was $72,000. During the course of Plaintiff's work, both Mr. Henry and Mr. Slider requested

additional work outside the scope of the original contract; based on his past experiences, Plaintiff then requested a change in the contract to reflect the additions.  Mr. Henry and Mr. Slider however, refused this request.  Fearing he would lose future business, Plaintiff agreed to complete the additional work without amending the original contract.

In November 2004, the weather was too cold to complete the project, so, allegedly, all parties agreed that Plaintiff would return to Davenport in the spring of 2005.  When Plaintiff contacted Mr. Henry and Mr. Slider to return to his job, however, they informed Plaintiff that the original contract price was too high, and refused Plaintiff permission to continue his work. Based on the work performed, including the contracted work and the additional work, Plaintiff claims a loss of $47,000 on the Davenport job.

### B.  Procedural History

After this Court dismissed the case without prejudice on December 29, 2006, judgment was entered on January 4, 2007.  Plaintiff then filed its Motion for Reconsideration on January 16, 2007.  On February 6, 2007, Defendant responded with its Memorandum in Opposition to Plaintiff's Motion for Reconsideration.  Accordingly, Plaintiff's Motion is now ripe for this Court's review.

### III.  STANDARD OF REVIEW

As a general principle, courts grant motions for reconsideration only if the moving party demonstrates one of the following: (1) A clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law. *GenCorp. Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  Such motions do not permit the losing party to "repeat old arguments previously considered and rejected, or to

raise new legal theories that should have been raised earlier." *National Metal Finishing Co. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990). Moreover, motions for reconsideration "should not be used to re-litigate issues previously considered." *American Marietta Corp. v. Essric Cement Corp.*, 2003 WL 463493 at *3 (6th Cir. 2003).

It is the Plaintiff's burden to demonstrate to the Court why it should grant relief. *See Rose v. Davis*, 2006 WL1401655 at *1 (S.D. Ohio). Accordingly, if the Plaintiff fails to specify under which part of Rule 60(b) its motion falls, the court can construe the argument as it best sees fit. *See Id.* at n.2 (a claim of legal error falls in the category of mistake, under Rule 60(b)(1)).

At issue in this action is Plaintiff's claim that this Court erred in determining that Defendant is not subject to personal jurisdiction in this Court. As Defendant notes, the procedural scheme for deciding Rule 12(b)(2) motions to dismiss is well-settled. Pursuant to Fed. Rule Civ. P. 12(b)(2), the defense of lack of jurisdiction over the person may be made by motion. To defeat this defense, it is the plaintiff's burden to establish personal jurisdiction by providing specific facts showing that the court has personal jurisdiction. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

When presented with a properly supported 12(b)(2) motion, the court has three procedural alternatives: (1) Decide the motion upon the pleadings and affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id.* When deciding the issue of personal jurisdiction upon the pleadings and affidavits alone, the court must view the pleadings and affidavits in the light most favorable to the plaintiff, and should not consider facts proffered by the defendant that conflict

-5-

with those set forth by the plaintiff. *Id.* The plaintiff has the burden of making a prima facie showing that personal jurisdiction exists in order to defeat dismissal. *Id.*

## IV.  ANALYSIS

In its Motion for Reconsideration, Plaintiff contends that it has established a prima facie case showing that personal jurisdiction exists. By its previous order, this Court held that it had no specific personal jurisdiction over the Defendant, and likewise, that it had no general personal jurisdiction over the Defendant.

Upon reviewing the pleadings and this Court's previous Order, this Court finds that while, as previously held, this Plaintiff did not establish specific personal jurisdiction, Plaintiff has sufficiently established this Court's general personal jurisdiction over Defendant in the state of Ohio. This Court finds, however, that venue is improper in Ohio and thus **DISMISSES** this action.

### A.  Personal Jurisdiction

Personal jurisdiction can be either specific or general, depending on the nature of the contacts that the defendant has with the forum state. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002); *see e.g. Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). This Court, in making its determination whether it has personal jurisdiction over Defendant, focuses only on the contacts alleged by Plaintiff. *See Bird*, 289 F.3d at 865.

### 1.  Specific Personal Jurisdiction[2]

This Court can exercise specific jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum state. *Conti v. Pneumatic Products Corp.*, 977

---

[2]        Adopted from Court's Order dated December 29, 2006.

F.2d 978, 981 (6th Cir. 1992).

The Sixth Circuit has long recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). In evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, this court must focus on whether there are sufficient minimum contacts between nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id.* (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Based upon *International Shoe* and its progeny, the Sixth Circuit has created a three-part test to determine whether a court may exercise specific jurisdiction so as to comport with the requirements of the Due Process Clause of the Fourteenth Amendment:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon, Corp.*, 228 F.3d at 721. (quoting *Southern Machine v. Mohasco Industries*, 401 F.2d 374, 381 (6th Cir. 1968)).

In establishing this test, the *Southern Machine* court referred to the notion of purposeful availment as the "*sine qua non*" for personal jurisdiction. 401 F.2d at 381-82. As such, this requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party of a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). Accordingly, when a defendant has deliberately engaged in significant activities within the State,

or has created continuing obligations between himself and the forum state, the defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475-76. (citations omitted).

In *Burger King*, a Florida corporation sued a Michigan resident in a United States District Court in Florida. The issue was whether the Michigan defendants purposefully availed themselves of Florida during the negotiation and execution of the franchise agreement so that a Florida court could exercise jurisdiction over them. Because of the nature of the contract dispute–"prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealings"– the Court concluded that there were sufficient contacts so that the defendant could anticipate being haled into a Florida court. *Id.* at 479.

In the instant case, this Court, in its previous order, limited its purposeful availment analysis to these three contacts: (1) The mailing of the corporate policy to Ohio; (2) a faxed list of all Defendant's district managers and staff to Ohio; and (3) the mailing of Buy-Sell Agreements to Ohio. This Court thus concluded that this case is distinguishable from *Burger King* in that there were no prior negotiations in Ohio, no contemplated future consequences in Ohio, and nor actual course of dealings in Ohio. Instead, this Court found that all contract negotiations, contemplated future consequences, and actual course of dealings took place primarily at Defendant's corporate headquarters in Ogden, Utah, or at travel plazas located outside of Ohio.

What this Court did not include in its calculus, however, is the critical fact that Defendant allegedly maintains *seven* travel plazas throughout Ohio. Analyzing this fact under *Burger King*, this Court now finds that Defendant deliberately engaged in significant activities within the State. Therefore, this Court concludes that Defendant's contacts with Ohio were *not* too random, attenuated, or fortuitous; consequently, Defendant purposefully availed itself of Ohio

Next, this court must consider whether the causes of action arose from defendant's activities in Ohio. Plaintiff alleges breaches of contract, among other causes of action, in Nebraska, Virginia, South Carolina, and Iowa. The record makes no mention of any cause of action arising out of Defendant's activities in Ohio. Therefore, this Court finds that the causes of action did not arise from Defendant's activities in Ohio.

Because this Court now finds that the second prong of the *Southern Machine* test is not satisfied, it need not proceed further in its analysis of specific personal jurisdiction. *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("each *Southern Machine* criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked"). Therefore, Defendant lacks the minimum contacts necessary to establish specific personal jurisdiction.

## 2. General Personal Jurisdiction

Unlike the specific jurisdiction inquiry which focuses on the relationship between the defendant's contacts with the forum state and the cause of action asserted by the plaintiff, "[g]eneral jurisdiction exists when a defendant has continuous and systematic contacts with the forum state sufficient to justify the State's judicial power with respect to any and all claims." *Aristech Chemical Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998); *see also*

*Helicopteros*, 466 U.S. 408.  The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence. *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F. 3d 1082, 1086 (9th Cir. 2000).

The United States Supreme Court has not yet outlined a specific test for analyzing whether a defendant's activities within a state are "continuous and systematic," such that general jurisdiction in a given forum is warranted.  *LSI Industries Inc. v. Hubbell Lighting*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  Instead, a court must look at the facts specific to each case to make such a determination.  *Id.*  Therefore, courts should consider whether defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.  *Id; see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (suggesting an aggregate economic notion of presence for purposes of general jurisdiction).

In *Gates*, the out-of-state defendant made telephone calls and sent numerous letters to the forum state.  *Id.*  Finding that these contacts were more occasional than continuous, and more infrequent than systematic, the court held that the defendant failed to establish a place of business in the forum state so as to approximate physical presence.  *Id.*  Likewise, in *Helicopteros*, an out-of-state defendant, who did not have a place of business in the forum state, failed to demonstrate continuous and systematic contacts.  466 U.S. at 416.  In that case, the Supreme Court held that contract negotiation sessions in the forum state, even when combined with other related visits, did not meet the "continuous and systematic" threshold.  *Id.*  Thus, the Court held that the defendant's contacts were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.  *Id.* at 418.

These cases, however, are distinguishable from cases in which the court *has found* continuous and systematic contacts between an out-of-state defendant and the forum state.  The seminal general jurisdiction case is *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952).  In *Perkins*, the president of an out-of-state defendant corporation maintained an office in Ohio.  *Id.* at 437.  Additionally, the president also "carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties . . . ."  *Id*.  Based on these alleged facts, the *Perkins* court determined that the forum state was permitted to exercise jurisdiction over the defendant.  *Id.* at 438.  Similarly, in *LSI Industries*, the court relied on Defendant's large quantity of sales and broad distribution network in the forum state in finding that Defendant was subject to general jurisdiction in the forum state.  232 F.3d at 1375.  *See also Michigan National Bank v. Quality Dinette Inc.*, 888 F.2d 462 (6th Cir. 1989) (exercise of general jurisdiction proper when defendants retained an independent sales representative in forum state, conducted mail order solicitations in forum state, and made over $625,000 in two years); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 2006 WL 3043115 (S.D. Ohio 2006) (holding that plaintiffs established a prima facie case that defendant was subject to general jurisdiction by demonstrating its continuous and systematic contacts with forum state).

In its complaint, Plaintiff alleges the following facts relevant to this Court's general jurisdiction analysis: Defendant owns and operates numerous travel plazas across the United States, *including Ohio*; Defendant *regularly* does business with residents of the State of *Ohio*; and Defendant operates a travel plaza in *Berkshire, Ohio*.  Additionally, in its Memorandum

-11-

Contra Defendant's Motion to Dismiss, Plaintiff alleges that Defendant has *significant contacts with Ohio*. In support of this allegation, Plaintiff provides Defendant's registration (as Exhibit A) with the Ohio Secretary of State which permits it to do business in Ohio. Last, Plaintiff asserts that Defendant owns *seven* travel plazas in the State of Ohio.

This Court, in its Order granting Defendant's Motion to Dismiss focused on specific contacts between Defendant and Plaintiff in Ohio–fax and mail transmissions, including Defendant's corporate policy, the directory list of Defendant's managers and employees, and several Buy-Sell agreements. Based on its analysis of these specific contacts, this Court concluded that Defendant *did not* have continuous and systematic contacts with Ohio sufficient to be subjected to general jurisdiction. Although this Court did recognize that Defendant owned and operated travel plazas in Ohio, this Court noted that Plaintiff failed to provide pertinent information such as the total amount of sales, revenue, or the number of employees working in Ohio.

Because this Court is not confined to the rigidity of a specific test, it looks at the facts specific to this case to determine whether Defendant's activities in Ohio are "continuous and systematic." From the pleadings, this Court finds–while not making any assumptions as to Defendant's dollar amount of sales–that Defendant makes sales, solicits business in Ohio, serves Ohio's markets, has designated an agent for service of process, and is registered with the Secretary of State to do business in Ohio. Consequently, this Court finds that these facts meet the "approximate physical presence" standard set forth in *Bancroft*, and thus holds that Defendant's activities in Ohio are "continuous and systematic." Therefore, Defendant is subject to this Court's exercise of general personal jurisdiction.

-12-

Upon reflection, this Court finds no basis for requiring Plaintiff to provide more specific facts showing that this Court has general jurisdiction. Viewing the facts set forth above in the light most favorable to the Plaintiff, this Court finds that the Plaintiff has met its burden of making a prima facie showing that general personal jurisdiction exists.

### 3. Venue

Pursuant to 28 U.S.C. § 1391(a),

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial party of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Under Section (a)(1) of 28 U.S.C. § 1391, venue is proper in the federal district court in Utah where Defendant resides and is incorporated and no other district. In *Standard Stoker Co., Inc. v. Lower*, the court stated, "a corporation is a resident only of the state of its incorporation, and of the district . . . of the corporation's head office." 46 F.2d 678, 683 (D.C. Cir. 1931). Therefore, venue in this Court is also improper under 28 U.S.C. § 1391(a)(1) because Defendant is not an Ohio corporation.

Relying on subsection (a)(2) this statute, Plaintiff contends that a substantial part of the events and omissions which gave rise to the instant action occurred in Ohio, and as a result, venue is proper in the Southern District of Ohio. Plaintiff relies on the fact that he, from his office in Ohio, worked directly with Defendant's corporate headquarters regarding future projects, invoices, and purchase orders. This argument is without merit. A substantial part of

the events or omissions giving rise to the claims in this action *did not* occur in Ohio.  Plaintiff

was paid in full for the work the performed in Ohio.  Therefore, no breach occurred in Ohio and

venue is not proper here.  On the contrary, and this Court noted in its previous Order, the alleged

breaches of contract and torts occurred at the following locations: Omaha, Nebraska; Wytheville

and Clearbrook, Virginia; Columbia, South Carolina; and Davenport, Iowa.  Thus, because the

Southern District of Ohio does not encompass these geographical regions, venue is improper

under 28 U.S.C. § 1391.

Venue is improper under 28 U.S.C. § 1391(a)(3) because there are numerous districts in

which the action might otherwise be brought, including Utah, as well as those districts

encompassing Defendant's travel plazas in Virginia, Iowa, South Carolina, Nebraska.

Therefore, having thus determined that venue is improper in Ohio, this Court shifts its

analysis to 28 U.S.C. § 1406(a), the federal dismissal or transfer statute.  Pursuant to section

1406(a),

> [t]he district court of a district in which is filed a case laying venue in the wrong
> division or district shall dismiss, or if it be in the interest of justice, transfer such case
> to any district or division in which it could have been brought.

Thus, based on the clear language of the statute, this Court has discretion either to

dismiss this action or to transfer it "in the interest of justice."

Plaintiff makes the argument that Defendant owns and operates several travel plazas

within the state of Ohio, and therefore, Defendant should anticipate litigating in Ohio.  The

applicable statute, however, permits only two options: (1) dismissal of the case; or (2) transfer of

the case.  Transfer under 1406(a)  is based on the premise that the district to which the Court will

transfer the action must be one in which it could have been brought.  Plaintiff seeks to keep the

-14-

instant action in this Court.  For the reasons set forth above, however, the Southern District of Ohio is an improper venue, and therefore, not a district in which the case could have been brought.

Defendant, on the other hand, suggests transfer to the United States District Court for the District of Utah, or to one of the district courts with jurisdiction over the travel plazas where Plaintiff performed his work.  In its previous Order, this Court addressed this suggestion.  Noting that some of the alleged breaches of contract occurred at various locations, it would not be in the interest of justice to transfer the case to Utah.  As in this case, absent an overwhelming situs where the events surrounding the action occurred, policy dictates that an action should be the Plaintiff's pejorative to choose his forum.  Thus, this Court chooses to dismiss this action for lack of venue.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration is **GRANTED**.  This Court finds that while it does not have specific personal jurisdiction over Defendant, it does have general personal jurisdiction over it.  Ohio, however, is not the proper forum for this action. This court **DISMISSES** this case pursuant to 28 U.S.C. § 1406.

**IT IS SO ORDERED.**


      s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 9, 2007**